**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| PAULA M. JONES, )<br>)<br>　　Plaintiff, )<br>) CIVIL ACTION<br>v. ) No. 09-2222-KHV<br>)<br>JOHN E. POTTER, Postmaster General )<br>of the United States Postal Service, )<br>)<br>　　Defendant. )<br>_____) | |

## MEMORANDUM AND ORDER

Pro se plaintiff Paula M. Jones brings suit against John E. Potter, Postmaster General of the United States Postal Service, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the National Agreement between American Postal Workers Union and the United States Postal Service ("National Agreement"). Plaintiff contends that defendant discriminated against her because of race and retaliated against her for filing a complaint with the Equal Employment Opportunity office of the Postal Service ("EEO").[1] See Pretrial Order (Doc. #29) filed June 14, 2010. This matter comes before the Court on Defendant's Motion For Summary Judgment Pursuant To Fed R. Civ. P. 56(b) (Doc. #32) filed June 24, 2010, Plaintiff's Motion For Summary Judgment Pursuant To Fed. R. Civ. P. 56(a) (Doc. #40) filed July 27, 2010 and Defendants's [sic] Motion To Strike Plaintiff's Motion For Summary Judgment And Memorandum In Support Docs. 40 And 41 (Doc. #43) filed July 27, 2010. For reasons stated below, the Court grants defendant summary judgment as to plaintiff's Title VII claims and strikes plaintiff's motion for summary judgment.[2]

---

[1]　　See 29 C.F.R. §§ 1614.105(a), 1614.106.

[2]　　Plaintiff claims retaliation in violation of Title VII and the National Agreement. See
(continued...)

**I.     Defendant's Motion To Strike**

Defendant asks the Court to strike as untimely plaintiff's motion for summary judgment and memorandum in support. Specifically, defendant notes that on July 19, 2010 plaintiff filed an untimely motion for summary judgment (Doc. #34) which the Court ordered stricken on July 21, 2010. See Doc. #37. In striking that motion, the Court extended the time for plaintiff to respond to defendant's motion for summary judgment and directed plaintiff to consult D. Kan. Rule 56.1 when preparing her response. Rather than filing a response, however, plaintiff re-filed her motion for summary judgment and memorandum in support.[3]

The pretrial order set June 30, 2010 as the dispositive motion deadline. Plaintiff filed her first motion for summary judgment 19 days late. She filed her second motion 27 days late. Plaintiff, who proceeds pro se, apparently considers her motions to be responses to defendant's summary judgment motion. While the Court is mindful of its obligation to construe pro se filings liberally, plaintiff's pro se status does not relieve her of the obligation to comply with the fundamental requirements of the Federal Rules of Civil Procedure. Merryfield v. Jordan, 584 F.3d 923, 924 n.1 (10th Cir. 2009). Despite the Court's instruction that plaintiff comply with D. Kan. Rule 56.1 and defendant's effort to help her do so by attaching a copy of the rule as an exhibit to the memorandum

---

[2](...continued)
Pretrial Order (Doc. #29) at ¶6.a(2). Defendant does not address the National Agreement portion of plaintiff's retaliation claim. The Court therefore construes his motion as seeking summary judgment only on the Title VII portion of plaintiff's retaliation claim.

[3]     Other than a slight modification to the cover page of exhibit D to plaintiff's memorandum in support, the motion and memorandum of July 27, 2010 mirror plaintiff's filings of July 19, 2010.

in support of its motion for summary judgment, plaintiff clearly titled her filing as a "motion" and asks the Court to grant her summary judgment. The motion does not respond to defendant's motion; it is a cross-motion and it is untimely. The Court therefore sustains defendant's motion to strike plaintiff's motion and memorandum (Docs. #40 and #41).

## II. Defendant's Motion For Summary Judgment

Plaintiff alleges discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1991 and retaliation in violation of the National Agreement between the American Postal Workers Union and the United States Postal Service. Specifically, plaintiff alleges that defendant (1) discriminated because of race when it issued Letters of Warning ("LOWs") on April 7, 2006 and February 13, 2007 and (2) retaliated when Marlene Nichols flagged her attendance as "documentation deemed desirable" for two pay periods in October and November of 2008.

Defendant seeks summary judgment, arguing that (1) plaintiff's race discrimination claim is barred because she did not timely exhaust administrative remedies or suffer adverse employment action under circumstances which give rise to an inference of discrimination and (2) plaintiff's retaliation claim fails because she did not suffer adverse employment action and no causal nexus exists between the alleged protected conduct and the acts of retaliation.

As noted, instead of filing a response to defendant's motion, plaintiff filed two untimely cross-motions for summary judgment which have been stricken. Defendant's motion is therefore unopposed. Under D. Kan. Rule 7.4(b), a party who fails to file a responsive brief or memorandum within the time specified waives the right to later do so, and the Court will consider and decide the motion as uncontested. Ordinarily, the Court will grant the motion without further notice. Id. A party's failure to respond to a summary judgment motion, however, is not by itself a sufficient basis

on which to enter judgment. Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002). Rather, the Court must determine whether judgment for the moving party is appropriate under Fed. R. Civ. P. 56. Id. By failing to file a response within the time specified by the local rule, plaintiff waives the right to respond or controvert the facts asserted in the summary judgment motion. Id. The Court therefore accepts as true all material facts asserted and properly supported in the summary judgment motion, but grants summary judgment if those facts entitle the moving party to judgment as a matter of law. Id. (citing Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001); Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175-76 (3d Cir.1990); Livernois v. Med. Disposables, Inc., 837 F.2d 1018, 1022 (11th Cir. 1988)).[4]

## **Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52.

A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252. The moving party bears the initial burden of showing the absence of any genuine issue of material fact.

---

[4] In fairness to plaintiff, the Court has reviewed her motion, memorandum and accompanying exhibits. The evidence submitted by plaintiff is not authenticated or verified, and in any event, it does not controvert the material facts upon which defendant seeks summary judgment.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, Okla., 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those "dispositive matters for which [she] carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). And, while the Court views the record in a light most favorable to the party opposing summary judgment, the nonmoving party may not rest on her pleadings but must set forth specific facts. Id. The nonmoving party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). If the nonmoving party's evidence is merely colorable or is not significantly probative, summary judgment may be granted. Liberty Lobby, 477 U.S. at 250-51.

## **Facts**

The following facts are uncontroverted:

Plaintiff is African-American. Since 1987, she has worked as a general expediter for the United States Postal Service at the Kansas City, Kansas Processing and Distribution Center. Plaintiff's job duties include scanning, loading and unloading mail delivery trucks. Marlene Nichols is Supervisor of Distribution Operations and Attendance Control Supervisor for all Tours. Mark Scarborough is Plant Manager.

Between April 6, 2006 and January 16, 2007, plaintiff took 88.13 hours of unscheduled leave. On January 31, 2007, Nichols told plaintiff that she planned to propose disciplinary action for failing to maintain a regular schedule. On February 13, 2007, Nichols issued a LOW to plaintiff. The LOW charged that because she had 88.13 hours of unscheduled leave, plaintiff had not met the

-5-

attendance requirements of her position.

Plaintiff responded to the LOW by filing a grievance through the Postal Workers' Union. On March 16, 2007, her union representative, Brenda Chapman, agreed with Scarborough to settle the grievance by reducing the time the LOW would remain in the plaintiff's file. On March 27, 2007, however, after receiving input from plaintiff, Chapman told Scarborough that the union had decided not to sign the agreement. Scarborough then denied the grievance in a Step 2 Grievance Decision issued March 28, 2007. Scarborough deemed the LOW appropriate because the evidence showed that plaintiff had used 88.13 hours of unscheduled sick leave on seven separate instances from April 6, 2006 through January 16, 2007. The union appealed the denial, and the appeal was settled on May 9, 2007. Under the settlement, the LOW was to be removed from plaintiff's personnel file on December 1, 2007 if plaintiff received no further disciplinary action. The Postal Service did not fire or suspend plaintiff, change her job responsibilities or work schedule, reduce her pay or benefits or fail to promote her as a result of the LOW.

On June 1, 2007, plaintiff filed an EEO complaint of discrimination alleging that Nichols and Scarborough had discriminated on the basis of race when they issued the LOW on February 13, 2007. Plaintiff also complained about a LOW issued on April 7, 2006. The EEO rejected that allegation because plaintiff had not contacted an EEO counselor about it until February 21, 2007.

A computer system called the Resource Management Data Base/Enterprise Resource Management System ("RMD e/RMS") manages postal employee leave. When an employee calls in an absence, RMD e/RMS automatically records it and sends an email to management, who approves or disapproves the absence by completing PS Form 3971 (Request for or Notification of Absence). Management can set flags in the RMD e/RMS system. Under Section 513.361 of the

Employee and Labor Relations Manual ("ELM") for the United States Postal Service, managers who deem documentation desirable to protect the interests of the Postal Service can require employees to submit medical documentation or other acceptable evidence to explain absences.

In Nichols' experience, postal employees who misuse sick leave call in unscheduled leave when a holiday falls near scheduled days off. When employees call in unscheduled absences, it is difficult for the Postal Service to get the mail out on time, especially around holidays when the mail is already backed up.

In 2008, federal holidays fell on October 11 (in pay period 22) and November 11 (in pay period 24). Nichols placed flags in the RMD e/RMS system that documentation was deemed desirable for plaintiff's absences during those two pay periods, which covered October 11 through October 17 and November 8 through November 14, 2008. Nichols flagged these two weeks because of plaintiff's pattern of poor attendance, to protect the interests of the Postal Service and its customers, as authorized under Section 513.361 of the ELM.

On October 14, 2008, plaintiff called the RMD e/RMS system to request unscheduled sick leave for dependent care on October 15 and 16, 2008. The system generated a PS Form 3971 (Request for or Notification of Absence) which noted that plaintiff was required to provide documentation to support her request. Plaintiff provided the required documentation and Nichols approved her sick leave request. On November 12, 2008, plaintiff called the RMD e/RMS system to request unscheduled sick leave for November 13 and 14, 2008. The system again generated a PS Form 3971 which noted that plaintiff was required to provide documentation to support her request. Plaintiff provided the required documentation and Nichols again approved her sick leave.

The Postal Service did not fire or suspend plaintiff, change her job responsibilities or work

schedule, reduce her pay or benefits or fail to promote her as a result of having her attendance record flagged.

**Analysis**

**I.      Discrimination**

Defendant argues that plaintiff's race discrimination claims are barred because as a matter of law (1) she did not timely exhaust administrative remedies regarding the letter of April 7, 2006 and (2) the LOW of February 13, 2007 did not constitute adverse employment action or occur under circumstances which give rise to an inference of discrimination.

Title VII prohibits intentional employment discrimination on the basis of race, which is known as "disparate treatment." See Ricci v. DeStefano, 129 S.Ct. 2658, 2672 (U.S. 2009). Disparate treatment occurs when an employer treats a particular person less favorably than others because of a protected trait. Id. To prove disparate treatment, plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action. Id. The precise articulation of a prima facie case depends on the context of the claim and the nature of the adverse employment action alleged. Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005). For both claims, plaintiff may make a prima facie case by showing that (1) she belongs to a protected class, (2) she suffered an adverse employment action and (3) the adverse employment action occurred under circumstances which give rise to an inference of discrimination. Freeman v. Spencer Gifts, Inc., 333 F. Supp.2d 1114, 1129 (10th Cir. 2004); Plotke, 405 F.3d at 1099-1100.

To prove that the adverse employment action occurred under circumstances which give rise to an inference of discrimination, plaintiff must establish through direct or indirect evidence that defendant had a discriminatory intent or motive. Orr v. City of Albuquerque, 417 F.3d 1144, 1149-

50 (10th Cir. 2005). If plaintiff offers no direct evidence that discrimination motivated the defendant's action, the Court assesses circumstantial evidence by applying the analytical "pretext" framework pioneered in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Id. Under McDonnell Douglas, a plaintiff alleging a Title VII violation has the initial burden to make a prima facie showing of race discrimination. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225-26 (10th Cir. 2000). The burden of establishing a prima facie case is not onerous, and plaintiff satisfies it by presenting a scenario which on its face suggests that defendant more likely than not discriminated against her. Id. at 1226. If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the questioned action. Id. Defendant's burden is of production, not persuasion. Glover v. NMC Homecare, Inc., 106 F. Supp.2d 1151, 1165 (D. Kan. 2000). If defendant meets this burden, plaintiff must show that defendant's stated reason is a pretext for prohibited discrimination. See id.

The Court addresses in turn both of plaintiff's claims of discrimination.

### A. LOW of April 7, 2006

As noted, defendant argues that plaintiff did not timely exhaust administrative remedies with respect to the LOW of April 7, 2006 and that she is therefore barred from basing a discrimination claim upon it.

A federal employee who wishes to file a race discrimination claim must first initiate contact with an EEO counselor within 45 to try to informally resolve it. See 29 C.F.R. § 1614.105(a)(1). Before filing a civil action, the employee must file a formal charge with his or her agency EEO office. 29 C.F.R. § 1614.106; see 42 U.S.C. § 2000e-16(c) (federal employee may file civil action as provided in § 2000e-5 if aggrieved by agency disposition of complaint). These exhaustion

requirements protect administrative agency authority and promote judicial efficiency by allowing the agency to resolve matters internally. Monreal v. Potter, 367 F.3d 1224, 1233 (10th Cir. 2004). A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEO office or commission. MacKenzie v. City and County of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005).

Defendant contends that plaintiff did not timely exhaust administrative remedies because she failed to contact an EEO counselor within 45 days of receiving the LOW of April 7, 2006. Unexcused failure to timely contact an EEO counselor within 45 days precludes suit in federal court. Lowe v. Chu, No. 09-CV-0393-CVE-PJC, 2010 WL 503109, at *5 (N.D. Okla. Feb. 8, 2010) (citing Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1325 (10th Cir. 2002)). Because plaintiff did not contact an EEO counselor within 45 days of receiving the LOW of April 6, 2007, and she has no legally sufficient excuse for her failure to do so, she failed to timely exhaust administrative remedies. Defendant is therefore entitled to summary judgment on this claim.

### B.     LOW of February 13, 2007

Defendant concedes the first element of a prima facie case, i.e. that plaintiff, an African-American, belongs to a protected class. As to the second element, defendant argues that summary judgment is appropriate because the LOW of February 13, 2007 is not adverse employment action and did not occur under circumstances which give rise to an inference of discrimination.

The Tenth Circuit liberally defines what constitutes adverse employment action and requires courts to take a case-by-case approach when considering whether certain actions constitute adverse employment actions. Brazill v. Gober, No. 98-2001-GTV, 2001 WL 135833, at *6-7 (D. Kan. Feb.

14, 2001). Conduct constitutes an adverse employment action if it involves a significant change in plaintiff's employment status. Pendelton v. Univ. of Kan. Med. Ctr., No. 04-2206-KHV, 2006 WL 83441, at *7 (D. Kan. Jan. 11, 2006). Some disciplinary actions such as warning letters and written reprimands constitute adverse employment action, which defendant acknowledges. See, e.g., Porter v. Potter, No. 04-4138-SAC, 2006 WL 1006882, at *6 (D. Kan. Apr. 13, 2006); Marx v. Schnuck Mkts., Inc., 76 F.3d 324, 329 (10th Cir. 1996). A letter or reprimand only constitutes adverse employment action, however, if it adversely affects the terms and conditions of plaintiff's employment, i.e. it affects the likelihood that plaintiff will be terminated, undermines plaintiff's current position or affects plaintiff's future employment opportunities. Porter, at *6. Here, the record contains no evidence that the LOW of February 13, 2007 adversely affected the terms and conditions of plaintiff's employment. The Postal Service did not fire or suspend plaintiff, change her job responsibilities or work schedule, reduce her pay or benefits or fail to promote her as a result of the letter. Defendant is therefore entitled to summary judgment on this claim.

## II. Retaliation

Defendant seeks summary judgment on plaintiff's retaliation claim, arguing that (1) the flagging of plaintiff's attendance records in October and November of 2008 is not adverse employment action and (2) no causal nexus exists between her EEO claim of June 1, 2007 and the flagging of her attendance records in October and November of 2008.

Title VII forbids employers from discriminating against an employee for opposing an employment practice made unlawful by Title VII. Pinkerton v. Colo. Dep't of Transp., 563 F.3d 1052, 1054 (citing 42 U.S.C. § 20003-3(a)). To establish a prima facie case of retaliation, plaintiff must show that (1) she engaged in protected opposition to discrimination, (2) she suffered materially

adverse action contemporaneous with or subsequent to such activity; and (3) a causal connection existed between the protected activity and the materially adverse action. See Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1202 (10th Cir. 2006); Knight v. City of Prairie Village, Kan., No. 06-2299-KHV, 2008 WL 474257, at *8 (D. Kan. Feb. 19, 2008). Unlike in disparate treatment cases, a materially adverse action for purposes of a retaliation claim need not affect the employee's terms and conditions of employment; rather, plaintiff must show that the challenged action could dissuade a reasonable employee from making or supporting a charge of discrimination. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006). A causal connection may be shown with evidence of circumstances which justify inference of retaliatory motive, such as protected conduct followed closely by adverse action. Annett v. Univ. of Kan., 371 F.3d 1233, 1239 (10th Cir. 2004). Standing alone, temporal proximity between the protected activity and the retaliatory conduct must be very close in time. O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001). Otherwise, "plaintiff must offer additional evidence to establish causation." Id.

If plaintiff establishes a prima facie case, defendant has the burden to articulate a legitimate, nondiscriminatory reason for adverse action. Pinkerton, 563 F.3d at 1064. If the employer does so, the burden shifts back to the plaintiff to show that "the reason given by the employer is mere pretext for the real, discriminatory reason for the adverse action." Id.

Defendant concedes the first element of a prima facie case, i.e. that plaintiff engaged in protected opposition to discrimination when she filed an EEO complaint on June 1, 2007. As to the second element, defendant argues that summary judgment is appropriate because the flags on plaintiff's attendance records in October and November of 2008 are not adverse employment actions. As to the third element, defendant argues that no causal nexus exists between the flags and

plaintiff's EEO complaint on June 1, 2007.

To show materially adverse action, plaintiff must demonstrate that a reasonable employee would have found the challenged action materially adverse, i.e. that it might have dissuaded a reasonable worker from making or supporting a charge of discrimination. White, 548 U.S. at 64. The standard focuses on the employer's retaliatory action, not the underlying discrimination opposed by the employee. Semsroth v. City of Wichita, 555 F.3d 1182, 1184 (10th Cir. 2009). The standard, while sensitive to the particular circumstances of each case, is an objective inquiry which turns not on plaintiff's personal feelings but on the perspective of a reasonable person in plaintiff's position, considering all the circumstances. Id. In this case-by-case approach, the Court asks whether the record contains objective evidence of material disadvantage or merely the bald personal preferences of plaintiff. Id at 1185.

On this record, the Court concludes that defendant did not engaged in materially adverse action when Nichols placed flags on plaintiff's attendance records. Plaintiff provided the required documentation and Nichols approved her sick leave requests. Defendant did not fire or suspend plaintiff, change her job responsibilities or work schedule, reduce her pay or benefits or fail to promote her as a result of having her attendance record flagged. Plaintiff points to no evidence which suggests that because of having her attendance record flagged, a reasonable person in her position would have been dissuaded from filing an EEO complaint. This is particularly true when viewed against plaintiff's attendance record, the fact that the 2008 federal holidays fell within both pay periods, and defendant's testimony that employees who misuse sick leave call in unscheduled leave when a holiday falls near their scheduled days off.

Furthermore, even if the flagging of plaintiff's attendance record constituted materially

-13-

adverse action, the record contains no evidence of a causal connection between plaintiff's filing of an EEO complaint in June of 2007 and Nichols' flagging of her attendance record more than 16 months later in October and November of 2008. See, e.g., Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (three month period insufficient to infer causation); Conner v. Schnuck Mkts., Inc., 121 F.3d 1390, 1395 (10th Cir. 1997) (four month period insufficient to infer causation). As a matter of law, the record contains insufficient evidence of causation.

Defendant is therefore entitled to summary judgment plaintiff's Title VII retaliation claim.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion For Summary Judgment Pursuant To Fed. R. Civ. P. 56(a) (Doc. #40) and Memorandum In Support Of Plaintiff's Motion For Summary Judgment Pursuant to Fed. R. Civ. P. 56(b) (Doc. #41) filed July 27, 2010 be and hereby are stricken.

**IT IS FURTHER ORDERED** that Defendant's Motion For Summary Judgment Pursuant To Fed R. Civ. P. 56(b) (Doc. #32) filed June 24, 2010 and Defendants's [sic] Motion To Strike Plaintiff's Motion For Summary Judgment And Memorandum In Support Docs. 40 And 41 (Doc. #43) filed July 27, 2010 be and hereby are **SUSTAINED**. Defendant is entitled to judgment on plaintiff's Title VII claims. Plaintiff's claim of retaliation in violation of the National Agreement between American Postal Workers Union and the United States Postal Service remains in the case.

Dated this 12th day of August, 2010 at Kansas City, Kansas.

s/ Kathryn H. Vratil  
KATHRYN H. VRATIL  
United States District Judge